UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY PERFORMING ARTS CENTER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZMAN TIME PRODUCTIONS, INC., and ALTER WAGSCHAL,<br><br>Defendants. | Civ. No. 17-cv-2901 (MCA) (LDW)<br><br>**MEMORANDUM OPINION<br>& REPORT AND<br>RECOMMENDATION OF REMAND** |

Before the Court are the motions of plaintiff New Jersey Performing Arts Center Corporation ("NJPAC") for leave to amend the Complaint (ECF No. 18) and of defendants ZMAN Time Productions, Inc. ("ZMAN Time") and Alter Wagschal ("Alter") to amend or correct their Answer (ECF No. 19). This motion is decided without oral argument, pursuant to Federal Rule of Civil Procedure 78. Having considered the parties' submissions, for the reasons set forth herein, and for good cause shown, plaintiff's motion to amend is **GRANTED IN PART AND DENIED IN PART**. It is further respectfully recommended that as the Court will lack subject matter jurisdiction upon the filing of the Amended Complaint, the case be remanded to the Superior Court of New Jersey at that time.[1] As defendants will have an opportunity to file an answer to the Amended Complaint upon remand, their motion for leave to amend the Answer is **DENIED AS MOOT**.

---

[1] Pursuant to Federal Rule of Civil Procedure 72, the undersigned issues an Opinion as to plaintiff's motion to amend, and a Report and Recommendation as to remand, which is considered dispositive of this action. *See* Fed. R. Civ. P 72.

## I. BACKGROUND

This action concerns defendants' alleged failure to compensate NJPAC in the principal amount of $216,599.32 under a written agreement governing defendants' use of NJPAC's facilities and services for rehearsals and performances of a play at NJPAC's Prudential Hall in December 2016. NJPAC commenced the action in the Superior Court of New Jersey, Essex County, Law Division in March 2017. ECF No. 1-1. Defendants timely removed the action to this Court on the grounds of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Plaintiff NJPAC is a New Jersey not-for-profit corporation with a principal place of business in Newark, New Jersey, ECF No. 1-1 ¶ 2, and both defendants are citizens of the State of New York. ECF No. 1 ¶ 5. The amount in controversy exceeds the $75,000 jurisdictional threshold. *Id.* ¶ 7.

The Court initially ordered fact discovery to commence in June 2017 and to conclude in September 2017. ECF No. 9. In August 2017, following an unsuccessful settlement conference, the parties sought and received permission to file motions for leave to amend their respective pleadings on or before August 25, 2017. ECF No. 17. Within that deadline, the parties filed the instant motions. ECF Nos. 18, 19.

Plaintiff seeks to file an Amended Complaint that would add four defendants and several claims to the current Complaint. Presently, the Complaint alleges that defendant ZMAN Time entered into a Short Term License Agreement to use NJPAC's Prudential Hall for rehearsals and performances in late December 2016 under which the principal sum of $216,599.32 remains due and owing to NJPAC after a check tendered by defendant ZMAN Time was returned for insufficient funds. ECF No. 1-1 ¶¶ 5-12. Plaintiff further avers that defendant Alter personally guaranteed ZMAN Time's obligations, in writing, on December 29, 2016. *Id.* ¶ 14. The Complaint

2

asserts claims for breach of contract against ZMAN Time, for breach of personal guaranty against Alter, and for account stated and unjust enrichment against both defendants. *Id.* ¶¶ 17-33.

The proposed Amended Complaint includes the foregoing allegations, as well as additional factual allegations and proposed new claims against the four additional defendants, ZMAN Productions, Inc. ("ZMAN Productions"), Yiztchok Wagschal ("Isaac"), Faigy Wieder and Aron Weinberger. NJPAC avers in the proposed Amended Complaint that the agreement with ZMAN Time concerned rehearsals and performances of a Hanukkah play called "Zusman" to take place at NJPAC between December 19 through 23, 2016 and December 26 to 29, 2016. Amended Complaint ("Am. Compl.") ECF No. 18-2 ¶ 1. The agreement provided for certain payments to be made no later than December 15, 2016, failing which NJPAC could terminate the agreement and thus not allow defendants to use its facilities for the play. *Id.* ¶¶ 14-16

Plaintiff alleges in the Amended Complaint that, on December 12, 2016, proposed defendant Isaac tendered to an NJPAC Manager, Kitab Rollins, a ZMAN Productions check post-dated December 28, 2016 in the amount of $140,000.00. *Id.* ¶ 29. Plaintiff alleges that Isaac knew at the time he tendered the check that there were insufficient funds for it to be honored, *id.* ¶ 31, but Isaac nevertheless "led Mr. Rollins to believe that [the check] was a valid check in order to induce NJPAC to forbear from terminating the [agreement], as it was entitled to do under paragraph 4(c) of the Agreement." *Id.* ¶ 33. Allegedly in reliance on Isaac's representations, plaintiff did not terminate the agreement on December 15, 2016 as it was entitled to do. *Id.* ¶¶ 33, 34.

After the check was returned for insufficient funds, NJPAC so advised Isaac and Alter, reminding them that Isaac had represented the check "would be a good check." *Id.* ¶¶ 35-37.

3

NJPAC further informed Isaac and Alter that it "could not let people into Prudential Hall as a result of ZMAN's material breach of its payment obligations under the [agreement]." *Id.* ¶ 37. Consequently, Alter offered to personally guarantee payment of the debt to NJPAC and signed such a guaranty. *Id.* ¶¶ 38-40. In alleged reliance on Alter's guaranty, NJPAC permitted the performances of Zusman to go forward. *Id.* ¶ 42. To date, the principal balance of $216,599.32 has not been paid. *Id.* ¶ 44.

Based on the foregoing allegations concerning proposed defendant Isaac's tendering of an invalid check from proposed defendant ZMAN Productions to fulfill ZMAN Time's obligations under the agreement, plaintiff seeks leave to assert additional claims for fraud, negligent misrepresentation and breach of oral guaranty against Isaac and ZMAN Productions. *Id.* ¶¶ 67-87. Plaintiff also seeks leave to implead ZMAN Productions, Isaac, Wieder and Weinberger as alleged alter egos of defendant ZMAN Time. *See id.* ¶¶ 19-28.

## II. DISCUSSION

Defendants argue the Court should deny plaintiff's motion to amend because the new claims against the additional defendants in its proposed Amended Complaint are futile, made in bad faith, and would prejudice defendants. *See* Defendant's Opposition ("Def. Opp."), ECF No. 20. For the reasons set forth below, the Court grants in part and denies in part plaintiff's motion to amend the Complaint. Further, as the permitted amendments will implead in this action an additional defendant who resides in New Jersey, Isaac, thus destroying diversity of citizenship jurisdiction, the Court recommends to the District Court that this case be remanded for lack of subject matter jurisdiction upon the filing of the Amended Complaint.

4

### A. Plaintiff's Motion To Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts grant leave to amend liberally in light of "the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The United States Supreme Court holds that leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. *Id.* "The burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted." *Luppino v. Mercedes-Benz USA, LLC*, Civ. No. 09-5582 (DMC) (JAD), 2012 WL 850743, at *2 (D.N.J. Mar. 8, 2012).

#### 1. Undue Delay

After the settlement conference on August 14, 2017, the Court extended the date by which the parties were to file their motions for leave to amend to August 25, 2017. ECF No. 17. As plaintiff filed its motion within that deadline, and as defendants fail to set forth any basis on which the Court could conclude that plaintiff unduly delayed in seeking leave to amend, the Court finds no undue delay. *See, e.g., AstraZeneca AB v. Perrigo Co. PLC*, Civ. No. 15-1057 (MLC) (TJB), 2015 WL 8483298, at *4 (D.N.J. Dec. 8, 2015) ("The Court would find it difficult to hold that a motion filed within the deadline set by the Court and known to the parties was the product of undue delay.").

#### 2. Bad faith

Defendants argue the Amended Complaint was proposed in bad faith, as the assertion of the breach of oral guaranty against Isaac, a New Jersey resident, was an attempt to "implead

5

unrelated parties to strip Defendants of the protections afforded by diversity jurisdiction, disparage Defendants before the Court, and to intimidate and harass Defendants." Def. Opp. at 4. As explained below, the Court finds the proposed amendments to name additional defendants, including Isaac, are not futile, as they are sufficiently pleaded in the Amended Complaint. Defendants' reliance on plaintiff's efforts to amend the Complaint as the sole basis for contending plaintiff has acted in bad faith is unavailing. *See Diallo v. ALO Enters. Corp.*, Civ. No. 12-3762 (AET), 2013 U.S. Dist. LEXIS 99681, at *7 (D.N.J. July 17, 2013) ("[T]here generally must . . . be some extrinsic evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground.") (citations omitted)).

### 3. Undue Prejudice

Defendants argue they will be prejudiced by the amendment of the Complaint, as plaintiff seeks improperly to expand the scope of discovery, increase time and costs of discovery, destroy diversity jurisdiction, and intimidate and harass defendants. Def. Opp. at 8. But the type of prejudice cognizable under Rule 15 is that which impairs the non-movant party's ability to present its case. *Dente v. Saxon Mortgage*, Civ. No. 11-6933 (AET), 2012 WL 1664127, at *2 (D.N.J. May 11, 2012). Here, defendants' ability to present their case will not be impaired by allowing plaintiff to amend the Complaint, even if it results in the remand of this case back to state court, nor will it be impaired by requiring them to engage in further discovery if the state court deems that appropriate. The Court therefore finds defendants will not suffer any undue prejudice or hardship as a result of the proposed amendments.

### 4. Futility

A proposed amended claim is futile if it would fail to state a cause of action upon which relief could be granted, in accordance with "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is defendants' burden to demonstrate the proposed amendments' futility. *See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

#### a. Fraud and Negligent Misrepresentation

Plaintiff seeks to assert causes of action for legal and equitable fraud and negligent misrepresentation against Isaac and ZMAN Productions in the Fifth and Sixth Counts of the proposed Amended Complaint. These claims are based largely on the allegation that Isaac tendered a ZMAN Productions check to an NJPAC representative and falsely or negligently represented that it was a valid check. Am. Compl. ¶¶ 68, 77. It further alleges that in reliance upon that representation, NJPAC continued to host the performance of Zusman and incurred $202,500.00 in unreimbursed expenses. *Id.* ¶¶ 71-75, 80-84.

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of the heightened pleading requirement is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and

7

fraudulent behavior." *Seville Indus. Mach. v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).

"To state a claim for common law fraud under New Jersey law, a plaintiff must allege '(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Delaware Valley Bindery Inc. v. Ramshaw*, No. 17-0422 (BRM) (TJB), 2017 WL 4119597, at *7 (D.N.J. Sept. 18, 2017) (citing *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 246 (App. Div. 2007)).

A claim for negligent misrepresentation requires "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotation omitted). *See Cohen v. Telsey*, Civ. No. 09-203 (DRD), 2009 WL 3747059, at *15 (D.N.J. Nov. 2, 2009) ("The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter.").

The Court finds plaintiff's claims for fraud and negligent misrepresentation are not futile, as they are stated with sufficient particularity to plead the elements of these claims, even under the heightened pleading requirements of Rule 9(b) that apply to plaintiff's proposed fraud claim. The Amended Complaint alleges Isaac, on behalf of ZMAN Productions, knowingly and/or negligently misrepresented that the check given to NJPAC was valid, with the intention that plaintiff rely upon that misrepresentation by not terminating the agreement as it was entitled to do, that plaintiff did in fact rely upon Isaac's misrepresentation and allowed the use of its facilities and labor for the

8

play, and that plaintiff was damaged as a result of defendants' misrepresentation. Plaintiff has sufficiently articulated the who, what, when, where, and how of its claims. *See John Wiley & Sons v. Rivadeneyra*, 179 F. Supp. 3d 407 (2016). These facts, taken to be true, plead the elements for fraud with sufficient particularity to put defendants on notice of the precise misconduct with which they are charged.[2] *A fortiori*, the allegations support a claim for negligent misrepresentation under the less onerous pleading standards for that claim.

Defendants appear to argue that the claims are insufficiently pleaded because any reliance upon defendants' representations would not have been reasonable. Whether reliance is reasonable, however, is ordinarily a question of fact, and therefore is an inappropriate basis upon which to find the amendment would be futile. *See BH 329 NB LLC v. CBRE, Inc.*, Civ. No. 16-8141, 2017 WL 3641566, at *4 (D.N.J. Aug. 24, 2017) (citing *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461, 472 (App. Div. 1998)).

Defendants further contend that Isaac's statements about the validity of the post-dated check should not be viewed as a misrepresentation of present fact. They argue that Isaac may not be charged with knowledge of whether or not there would be sufficient funds to cover the check in the future when plaintiff sought to cash it, as that would be "a future fact completely out of his control." Def. Opp. at 5. The Court finds this argument unconvincing. The Court must assume as true the allegation in the proposed Amended Complaint that Isaac "knew that the account upon which [the check] was drawn would have insufficient funds for the check to be honored by

---

[2] The Court notes that Isaac's alleged fraud as an officer of ZMAN Productions may be imputed to that corporation, whose check he tendered, for purposes of assessing the sufficiency of the proposed claim at this pleadings stage. *See John Wiley & Sons, Inc. v. Rivadeneyra*, 2013 WL 6816369, at *6 (D.N.J. Dec. 20, 2013).

9

NJPAC's bank." Am. Compl. ¶ 31. "[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud, etc." *Lo Bosco v. Kure Engineering Ltd.*, 891 F. Supp. 1020, 1031 (D.N.J. 1995). As plaintiff essentially alleges that Isaac was aware that there would be insufficient funds in ZMAN Production's account to cover the check when NJPAC sought to cash it, Isaac's alleged misrepresentations support a cause of action for fraud.

Finally, defendants suggest plaintiff's claims would be futile because "they are merely redundant contract claims 'dressed up' as fraud claims." Def. Opp. at 8. The Court disagrees. The economic loss doctrine "defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted). While the economic loss doctrine as applied to fraud claims is not settled in New Jersey, this Court has held that fraud claims extrinsic to the contract are not barred by the doctrine. *See Beijing Gongmei Import & Export Co., v. Ijbara*, Civ. No. 10-2821 (SDW) (MCA), 2012 WL 3228711, at *7 (D.N.J. 2012). Here, given that there was no direct contractual relationship between plaintiff and proposed defendants Isaac and ZMAN Productions, the fraud claims are not based on the contract between plaintiff and ZMAN Time and are thus extrinsic to the contract; as such, they are not barred by the economic loss doctrine. *See SRC Construction Corp. v. Atlantic City Housing Auth.*, 935 F. Supp. 2d 796, 799 (D.N.J. 2013) (noting that "the doctrine only applies to bar certain tort claims *between parties to a contract*"); *Bedwell Co. v. Camden Co. Improvement Auth.*, 2014 WL 3499581, at *3 (D.N.J. July 14, 2014) (same).

For the foregoing reasons, the Court finds the proposed claims for fraudulent and negligent misrepresentation are not futile.

### b. Piercing the Corporate Veil

The Amended Complaint alleges proposed defendants ZMAN Productions, Isaac, Wieder, and Weinberger are the alter egos of current defendant ZMAN Time and ZMAN Time's corporate veil may be pierced to hold these defendants liable for its obligations. ZMAN Productions is allegedly a New York corporation with a principal place of business in Monroe, New York. Am. Compl. ¶ 7. Isaac is alleged to be an officer and shareholder of both ZMAN Time and ZMAN Productions. *Id.* ¶ 8. Wieder and Weinberger allegedly are shareholders and officers of ZMAN Time. *Id.* ¶¶ 10, 11.

Plaintiff's alter ego theory is based on a host of allegations. Plaintiff alleges that ZMAN Productions and ZMAN Time operated out of the same office, paid for by ZMAN Productions, and that ZMAN Productions did not deal with ZMAN Time at arm's length. *Id.* ¶¶ 20-24. It further alleges ZMAN Time's officers inadequately capitalized the corporation (as demonstrated by ZMAN Productions having issued three checks to plaintiff to cover ZMAN Time's contractual obligations), used employees of other companies to perform tasks on its behalf, and did not maintain proper records. *Id.* ¶¶ 23-28. Isaac, Wieder, and Weinberger are alleged to have funneled all ticket revenue received from the Zusman play to ZMAN Productions, rather than the contracting party ZMAN Time, so those moneys would be unreachable by NJPAC under the agreement. *Id.* ¶ 28. Additionally, ZMAN Time's incorporator allegedly advised plaintiff's process server that ZMAN Time was "unknown" at the office space it shares with ZMAN

Productions, which is the address ZMAN Time had listed as its business address in the contract with plaintiff. *Id.* ¶ 22; ECF No. 1-1 at ECF p. 14.

In diversity jurisdiction cases such as this, the forum state's choice-of-law rules apply. This in turn requires application of the law of the state of incorporation in determining whether a claim for piercing the entity's corporate veil has been sufficiently stated. *See Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (citing *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148, 154 n.1 (Law Div. 1985)). As ZMAN Time is a New York corporation, the Court applies New York law in assessing the sufficiency of the alter ego claim.[3]

Under New York Law, "when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego, the corporate form may [be] disregarded to achieve an equitable result." *JSC Foreign Econ. Assn Technostroyexport v. Int'l Dev. & Trade Servs.*, 386 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) (quoting *Austin Powder Co. v. McCullough*, 628 N.Y.S.2d 855, 857 (App. Div. 1995)). To pierce the corporate veil, a showing is required that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993). *See also Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22, 27 (2d Cir. 2014).

As to the first prong, New York courts consider ten factors:

---

[3] While plaintiff does not concede the applicability of New York law, it does make its argument as to non-futility of the claim by citing New York law.

> (1) whether corporate formalities are observed, (2) whether the capitalization is adequate, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) whether there is overlap in ownership, officers, directors, and personnel, (5) whether the corporate entities share common office space, address and telephone numbers, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the alleged dominator deals with the dominated corporation at arms length, (8) whether the corporation is treated as an independent profit center, (9) whether others pay or guarantee debts of the dominated corporation, and (10) whether the corporation in question had property that was used by the alleged dominator as if it were the dominator's own.

*Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 534 n.3 (S.D.N.Y. 2014) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). This is a fact-intensive inquiry, and no one factor is dispositive. *See MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *Pereira v. Grecolas Ltd. (In re Saba Enters.)*, 421 B.R. 626, 650 (S.D.N.Y. 2009).

Here, the Court finds plaintiff has sufficiently pleaded that ZMAN Time was dominated by its officers and ZMAN Productions to satisfy the first prong of this claim. The Amended Complaint alleges ZMAN Time was inadequately capitalized by its officers and the corporate formalities were not observed, as evidenced by ZMAN Productions' checks being used to pay a debt for ZMAN Time under the latter's contract with plaintiff. Am. Compl. ¶ 23. There was an overlap of officers, directors, and personnel, as Isaac was an officer and director of both ZMAN Time and ZMAN Productions. *Id.* ¶ 25. Both corporations shared an office space, paid for by ZMAN Productions. *Id.* ¶¶ 20-21. Alter, an officer of ZMAN Productions guaranteed the debt of ZMAN Time, the dominated corporation. *Id.* ¶¶ 36-40.

As to the second prong, "that such domination was used to commit a fraud or wrong against the plaintiff," the Amended Complaint alleges that the defendants "funneled all of the revenues

from . . . ticket sales through ZMAN Productions rather than ZMAN Time, thus leaving NJPAC without recourse when ZMAN Time defaulted on its payment obligations." *Id.* ¶ 3. This sufficiently alleges that the defendants' domination of ZMAN Time was used to commit a fraud or wrong against plaintiff and resulted in injury. *See Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs., LLC)*, No. 09-15469 (SHL), 2015 Bankr. LEXIS 3507, at *28-30 (S.D.N.Y. Oct. 16, 2015) ("Courts have held that the diversion of funds, thereby rendering a corporation judgment-proof, constitutes a wrong under New York law for the purposes of piercing the corporate veil.") (collecting cases)). Accordingly, the Court finds the Amended Complaint is not futile as to the claims seeking to pierce the corporate veil of ZMAN Time.

### c. Breach of Oral Guaranty

Plaintiff seeks to amend the Complaint to assert a claim against Isaac and ZMAN Productions for breach of oral guaranty. Am. Compl. ¶¶ 85-88. To support this claim, the Amended Complaint alleges Isaac tendered a check to NJPAC and led its representative to believe that the check was valid, in reliance upon which NJPAC did not exercise its right to terminate the agreement. *Id.* ¶¶ 33-34, 85-88.

Defendants argues that two defects in this proposed claim render it futile. First, the proposed claim fails to allege any oral promise by Isaac and ZMAN Productions to assume an obligation to plaintiff. Second, the claim is barred by New Jersey's statute of frauds, which requires that a guaranty to pay for the debt of another be in writing in order to be enforceable. *See* N.J. Stat. Ann. § 25:1-15 ("A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's

14

agent. The consideration for the promise need not be stated in the writing."). The Court agrees that the proposed claim is futile.

As an initial matter, the Amended Complaint does not allege Isaac personally guaranteed the debt at all. It merely avers that Isaac led NJPAC's representative to believe that the check he tendered on behalf of ZMAN Time was valid. *See* Am. Compl. ¶ 18. This is not a promise to assume a debt.

Second, even if the elements of breach of an oral guaranty had been pleaded, the claim as currently pleaded would be barred by the statute of frauds. Plaintiff argues that the requirement that the guaranty be in writing is excused if the guarantor's "main purpose" in making the guaranty was for his own interest. *See Schoor Assoc. v. Holmdel Heights Constr. Co.*, 68 N.J. 95, 101–02 (1975) ("'[W]hen the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.'") (quoting 2 Corbin on Contracts § 366, at 273-74 (1950))). But the Amended Complaint does not plead facts to demonstrate this exception would apply. Instead, plaintiff argues in its reply brief that "it is reasonable to *infer* that Isaac, as President of ZMAN Time, personally benefitted from his promise to pay the debt that ZMAN Time owed to NJPAC." ECF No. 23 at 5 (emphasis added). The Court may not "infer" what is not pleaded in assessing the sufficiency of a proposed claim. Nowhere does the proposed Amended Complaint allege that Isaac's main purpose in orally guaranteeing the debt was for his own benefit. Accordingly, the Court denies plaintiff's motion to amend the complaint to add the proposed claim for breach of oral guaranty against Isaac and ZMAN Productions.

15

For the reasons stated above, plaintiff's motion for leave to amend his Complaint is **GRANTED IN PART AND DENIED IN PART**.

### B. Recommendation of Remand

This action was removed to this Court pursuant to diversity of citizenship jurisdiction, 28 U.S.C. § 1332, as the plaintiff was completely diverse from both defendants named in the complaint and the amount in controversy exceeded $75,000. *See* ECF No. 1. Having granted plaintiff's motion to amend to, *inter alia*, name Isaac as a defendant, the Court recommends to the District Court that this case be remanded for lack of subject matter jurisdiction. Plaintiff and newly-named defendant Isaac are citizens of New Jersey, and therefore, upon plaintiff's filing of the Amended Complaint, plaintiff will no longer be completely diverse in its citizenship from all defendants. *See In re Briscoe*, 448 F.3d 201, 215 ("[A] proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant."). Accordingly, upon plaintiff's filing of an Amended Complaint consistent with this Opinion, the Court recommends that the District Court remand this matter to the Superior Court of New Jersey, Essex County, Law Division, for lack of subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the Complaint (ECF No. 18) is **GRANTED IN PART AND DENIED IN PART**, and an appropriate Order consistent with this Opinion will be entered. It is further **RECOMMENDED** that upon plaintiff's filing of the Amended Complaint, the District Court remand this matter for lack of subject matter jurisdiction. As the Court recommends remanding the matter to state court for lack of subject matter

jurisdiction, where defendants will have an opportunity to file a new Answer to the Amended Complaint, the Court **DENIES AS MOOT** defendants' motion to amend or correct the Answer (ECF No. 19).

Dated: February 9, 2018

*Leda Dunn Wettre*

**Leda Dunn Wettre**
**United States Magistrate Judge**

Original: Clerk of the Court
cc: Hon. Madeline Cox Arleo, U.S.D.J.
All Parties

17

